IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Russell Lewis Walker, | ) | Case No. 6:25-cv-12442-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Debra R. McCaslin, *in her individual* | ) | |
| *capacity*; Dante John Esposito, | ) | |
| *in his individual capacity*; | ) | |
| Douglas Wayne Fender, II, *in his* | ) | |
| *individual capacity*; Chad Cox, *in his* | ) | |
| *individual capacity*; Richard Waters, *in* | ) | |
| *his individual capacity*; Berna Anderson, | ) | |
| *in her individual capacity*; McCormick | ) | |
| County; John/Jane Doe, *Officers 1-5* | ) | |
| *in their individual capacities*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on Plaintiff's Complaint, a Report and Recommendation ("Report") of the Magistrate Judge, and Plaintiff's petition for a writ of mandamus. [Docs. 1; 10; 16.] In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., this matter was referred to United States Magistrate Judge William S. Brown for pre-trial proceedings.

On September 15, 2025, the Magistrate Judge issued a Report recommending that the action be dismissed without issuance and service of process and without leave to amend. [Doc. 10.] The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they

failed to do so.  [*Id.* at 26.]  On October 2, 2025, the Clerk docketed objections to the Report from Plaintiff.  [Doc. 14.]  On October 27, 2025, the Clerk docketed a petition for a writ of mandamus from Plaintiff to compel issuance of summonses and a ruling on Plaintiff's objections to the Report.  [Docs. 16; 16-1.]

On November 21, 2025, this Court issued an Opinion and Order (the "2025 Order") accepting the Report and incorporating it by reference to the extent it was consistent with the 2025 Order; dismissing Plaintiff's action without issuance and service of process, without leave to amend, and without prejudice; and finding as moot in part and denying in part Plaintiff's petition for writ of mandamus.  [Doc. 21.]  In dismissing the action, the Court concluded that Plaintiff's federal claims were barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), and the Court declined to exercise supplemental jurisdiction over Plaintiff's state law claims.  [Doc. 21 at 3–6.]  Earlier today, however, the Court granted Plaintiff's consolidated motion to vacate void judgment for manifest error of law and structural failure of the judicial process, concluded that dismissing the federal claims based on *Heck* constituted clear error, and therefore vacated the 2025 Order and the accompanying judgment (the "2026 Order").  [Doc. 38.]  Accordingly, the Court now issues this Opinion and Order, addressing Plaintiff's objections to the Report and Plaintiff's mandamus petition.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court.  The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court.  *See Mathews v. Weber*, 423 U.S. 261, 270–71

2

(1976). The Court is charged with making a de novo determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. *See* 28 U.S.C. § 636(b). The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See id.* The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (internal quotation marks omitted)).

## **BACKGROUND**

The Magistrate Judge concisely set out the background facts:

> Plaintiff commenced this action on September 10, 2025, by filing a document captioned as a Complaint under 42 U.S.C. § 1983. Plaintiff brings this action against Defendants "for monetary damages and declaratory relief . . . to redress the willful and malicious deprivation of rights secured to [Plaintiff] by the Fourth and Fourteenth Amendments to the United States Constitution." Plaintiff contends Defendants "conspired to and did willfully deprive [Plaintiff] of [his] constitutional rights by initiating and fabricating a baseless criminal proceeding in a court that possessed no jurisdiction over [his] person or the subject matter," resulting in an unlawful seizure, warrantless arrest, false imprisonment, unconstitutional and humiliating search, and "a coerced guilty plea to a non-existent—'phantom'—charge that was created by state officials only after [Plaintiff's] plea was entered." Plaintiff asserts that "Defendants' actions were taken in the clear absence of all lawful authority and in violation of clearly established constitutional law, stripping them of any entitlement to judicial, prosecutorial, or qualified immunity." As such, Plaintiff seeks compensatory and punitive damages, a declaration that Defendants' actions were unconstitutional, and a declaration that Plaintiff's conviction "is void ab initio."

3

Plaintiff alleges that ["t]he criminal matters that formed the pretext for the events of April 9, 2024, []were long-dormant cases originating exclusively in Edgefield County, South Carolina." According to Plaintiff, [Defendant] Judge Debra R. McCaslin ("Judge McCaslin") improperly convened a hearing concerning the Edgefield County matters in McCormick County, "a venue with no territorial or subject matter jurisdiction over [Plaintiff] or the cases." No order of transfer or any other legal instrument existed that would grant Judge McCaslin the authority to preside over an Edgefield County case in McCormick County and "[h]er assumption of authority was void from the outset."

Plaintiff asserts that Defendants Dante John Esposito ("Esposito") and Douglas Wayne Fender II ("Fender") "explicitly admitted on the official record that [the State] possessed no valid, pending indictments against [Plaintiff] upon which it could proceed." Defendant Fender stated on the record that Defendant Esposito "'has prepared some new indictments that will more particularly allege what he wants to prove at trial. . . . But those are indictments that the state will proceed on.'" Plaintiff contends this "was an unambiguous judicial admission that the indictments the State intended to use did not yet exist and had not been presented to a grand jury." Plaintiff alleges that, "[a]t the conclusion of this phantom hearing based on non-existent charges, [Judge] McCaslin formally terminated her judicial function concerning [Plaintiff], and the official transcript confirms [that the hearing concluded]." Plaintiff asserts, "[a]t that moment, any semblance of a judicial proceeding was formally extinguished," and Plaintiff "lawfully departed the courtroom and the courthouse."

However, after Plaintiff left the courthouse, "Defendant Fender initiated a prohibited ex parte communication with [Judge] McCaslin." "Defendant Fender urged [Judge] McCaslin to take punitive action against [Plaintiff] for an alleged bond violation, despite the fact that, as established moments earlier on the record, there were no valid, pending charges upon which a bond could be lawfully conditioned." Plaintiff contends that Judge McCaslin, "[a]cting in the clear and complete absence of all jurisdiction, and having already terminated the proceeding, . . . abandoned any judicial role and assumed a purely executive one, issuing the verbal command: 'Let's pick him up.'" According to Plaintiff, Judge

4

McCaslin's order "was not a judicial order; it was a facially invalid command to seize a citizen without a warrant, without probable cause, without a pending charge, and without jurisdiction."

Then, pursuant to Judge McCaslin's "illegal oral command," Plaintiff was "hunted down, stopped, and arrested without a warrant" by Defendant Richard Waters ("Waters"). Plaintiff was then transported to the McCormick County Detention Center, unlawfully imprisoned, and was subjected to a "humiliating and degrading search of [his] person, including a strip search." The officials responsible for Plaintiff's imprisonment "knew the detention was illegal."

"On April 10, 2024, while unlawfully incarcerated, under extreme duress, and facing the prospect of indefinite illegal confinement, [Plaintiff] was coerced into entering a guilty plea." According to Plaintiff, "[t]he official court transcript of the April 10 proceeding proves the charges to which [Plaintiff] was forced to plead did not legally exist." Plaintiff contends that Judge McCaslin asked Plaintiff whether he would waive presentment of the indictment to the grand jury. Plaintiff asserts that "[a]n individual cannot lawfully waive presentment of an indictment that does not exist." Plaintiff alleges that this exchange "is a judicial admission by [Judge] McCaslin that she was manufacturing a conviction out of thin air, in the complete absence of the jurisdictional prerequisite of a grand jury indictment."

Plaintiff contends that official state criminal history records "confirm the fraudulent nature of the entire scheme orchestrated by the Defendants." Plaintiff asserts the record shows that, on April 10, 2024, the "same day as the coerced plea," all of Plaintiff's charges were formally dismissed. Nevertheless, according to Plaintiff, the record shows a "new conviction for assault [(the 'Assault Conviction')[1]], with an

---

[1] Court records indicate that Plaintiff was charged in the Edgefield County Court of General Sessions with second degree assault and battery at case number 2024GS1900052 and resisting arrest at case number 2024GS1900053; pled guilty to both charges on April 10, 2024; and was sentenced by Judge McCaslin to three years suspended upon service of 268 days' imprisonment with credit for time served and one year probation as to the first charge and 268 days' imprisonment with credit for time served as to the second charge. *See* Edgefield County Eleventh Judicial Circuit Public Index, available at https://publicindex.sccourts.org/Edgefield/PublicIndex/PISearch.aspx

offense date that was retroactively created six days later, on April 16, 2024." Plaintiff asserts that it was "legally and factually impossible" for him to have entered a knowing, voluntary, and intelligent plea on April 10, 2024, to a "charge that was not even fabricated and entered into the state criminal justice system until April 16, 2024."

Based on the allegations in the Complaint, Plaintiff asserts the following causes of action. For a first cause of action, Plaintiff asserts a claim for false arrest and false imprisonment against Defendants Waters, Berna Anderson ("Anderson"), and Chad Cox ("Cox"). For a second cause of action, Plaintiff asserts a claim for deprivation of liberty by a judge acti[ng] without jurisdiction in violation of the Fourth Amendment against Judge McCaslin. For a third cause of action, Plaintiff asserts a claim for malicious prosecution against Defendants Esposito and Fender. For a fourth cause of action, Plaintiff asserts a claim for unlawful search in violation of the Fourth Amendment against Defendants Anderson, Cox, and the Doe Defendants. For a fifth cause of action, Plaintiff asserts a claim for municipal liability against Defendant McCormick County. Plaintiff also asserts supplemental state law claims under the South Carolina Tort Claims Act, and for false imprisonment, malicious prosecution, and abuse of process.

For his relief, Plaintiff seeks a declaratory judgment "that the acts and omissions of Defendants violate Plaintiff's rights secured by the Fourth and Fourteenth Amendments"; a declaratory judgment "that the guilty plea entered by Plaintiff on April 10, 2024, and the resulting conviction, are constitutionally invalid and void ab initio"; compensatory damages for the "loss of liberty, emotional distress, humiliation, mental anguish, and damage to reputation";

---

(search by case numbers listed above) (last visited June 11, 2026); *see also Phillips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (explaining that courts "may properly take judicial notice of matters of public record"); *Colonial Penn Ins.*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that the most frequent use of judicial notice is in noticing the content of court records." (internal quotation marks omitted)). For ease of reference, the Court refers to both convictions collectively as the "Assault Conviction." On April 22, 2024, Plaintiff filed a notice of appeal with the South Carolina Court of appeals, which was dismissed by unpublished opinion filed on June 10, 2026. *See State v. Walker*, No. 2024-000643 (S.C. Ct. App.), available at South Carolina Appellate Case Management System, https://ctrack.sccourts.org/public/caseSearch.do (search by Appellate Case No. "2024-000643") (last visited June 11, 2026).

punitive damages to punish each Defendant for their "willful and malicious conduct and to deter similar conduct in the future"; an [award] of reasonable attorney's fees and costs; and any other relief that is just, proper, and equitable.

[Doc. 10 at 2–5 (footnote and citations omitted) (footnote added) (some alterations in original).]

## DISCUSSION

### *Heck, Younger*, and Declaratory Relief

In the Report, the Magistrate Judge concluded that Plaintiff's § 1983 claims are barred by *Heck* because Plaintiff "pled guilty to the charges against him, and [he] has not alleged facts showing that his conviction has been invalidated." [*Id.* at 13.] Plaintiff challenges this portion of the Report [Doc. 14-1 at 5], and the Court considers it de novo.

As explained in the 2026 Order, the Court does not agree that the § 1983 claims are subject to summary dismissal under *Heck*. [Doc. 38 at 5–8.] In *Heck*, the Supreme Court explained,

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Heck*, 512 U.S. at 486–87 (footnote omitted). The Court further provided that

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed

7

> unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 487. This is known as the "favorable termination" requirement. *Wilson v. Johnson*, 535 F.3d 262, 263 (4th Cir. 2008) (internal quotation marks omitted). Moreover, for causes of action that would necessarily demonstrate the invalidity of a plaintiff's confinement or its duration, *Heck* bars claims for injunctive or declaratory relief as well as those for money damages. *See Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit . . . .—*if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration."); *Mobely v. Tompkins*, 473 F. App'x 337, 337 (4th Cir. 2012) (applying *Heck* in a civil action seeking damages and injunctive relief relating to federal convictions).

"The burden of identifying a conviction and showing that success in [the case before the court] would necessarily imply the invalidity of the plaintiff's conviction rests with the defendant." *Barricks v. Wright*, No. 7:23-cv-00551, 2025 WL 692362, at *6 (W.D. Va. Mar. 4, 2025), *aff'd*, 168 F.4th 210 (4th Cir. 2026). However, if the court determines that a judgment in the plaintiff's favor would necessarily imply the invalidity of one of his convictions or sentences, the plaintiff bears the burden of alleging and proving favorable termination regarding that conviction or sentence. *Brunson v. Stein*, 116 F.4th 301, 306–09 (4th Cir. 2024).

In Counts One, Two, and Three, Plaintiff challenges his arrest and imprisonment on April 9, 2024, for an alleged bond violation relating to the long-dormant charges that were subsequently dismissed. [Doc. 1 ¶¶ 21–28, 30, 36, 39–52.] Count Four challenges a strip search of Plaintiff at the McCormick County Detention Center directly following the

8

challenged arrest. [*Id.* ¶¶ 29, 53–57.] And Count Five is a *Monell* claim based on these underlying actions. [*Id.* ¶¶ 58–62.]

Plaintiff alleges that, partly as a result of Defendants' actions that form the basis for these claims, he "was coerced into entering a guilty plea." [Doc. 1 ¶ 31; *see id.* at 16.] However, as the Fourth Circuit has explained, "[n]ot all § 1983 claims bearing some relationship to a valid criminal judgment are *Heck*-barred." *Clayton v. Johnson*, No. 23-7146, 2025 WL 1303950, at *1 (4th Cir. May 6, 2025) (citing *Heck*, 512 U.S. at 487 & n.7). "For example, an unreasonable search and seizure claim does not necessarily imply the invalidity of a conviction or sentence if (1) the conviction *derives from a guilty plea* rather than a verdict obtained with unlawfully obtained evidence and (2) the plaintiff does not plead facts inconsistent with guilt." *Id.* (emphasis added). Additionally, "'[a] false-arrest claim . . . has a life independent of an ongoing trial or putative future conviction—it attacks the arrest only to the extent it was without legal process, even if legal process later commences.'" *Id.* (alterations in original) (quoting *McDonough v. Smith*, 588 U.S. 109, 122 (2019)); *see also Dizzley v. Garrett*, 836 F. App'x 157, 158 (4th Cir. 2021) ("[A] claim for false arrest . . . does not by its nature call into question the validity of a conviction." (alterations in original)).

In this case, Plaintiff does not allege that the criminal charges underlying his arrest and imprisonment on April 9, 2024, were the same charges he pled guilty to the next day. Nor does he even allege that the charges he pled guilty to arose out of the same events as the long-dormant charges underlying the bond violation for which he was arrested on April 9. Accordingly, the Court cannot determine at this point that a judgment for Plaintiff on one or more of his claims arising out of his April 9, 2024, arrest and imprisonment

would necessarily imply the invalidity of the Assault Conviction.  *See Clayton*, 2025 WL 1303950, at *1; *Riddick v. Lott*, 202 F. App'x 615, 616–17 (4th Cir. 2006) (vacating a district court's order adopting a magistrate judge's recommendation to dismiss a § 1983 action as *Heck* barred when the record was not clear whether a favorable judgment on the plaintiff's claim would necessarily imply the invalidity of his conviction).  Nor can the Court determine that Count Four—concerning the strip search—or Count Five—the *Monell* claim—are barred by *Heck*.  The Court therefore agrees with Plaintiff that his § 1983 claims are not subject to summary dismissal under *Heck*.[2]

---

[2] The Magistrate Judge also concluded that "*[t]o the extent Plaintiff's claims are brought to challenge any pending or ongoing proceedings in the state courts*, such claims are not properly before this Court based on the *Younger* abstention doctrine."  [Doc. 10 at 11 (emphasis added).]  The Court agrees but cannot conclude that *Younger v. Harris*, 401 U.S. 37 (1971), bars Plaintiff's § 1983 claims in their entirety.  *Younger* abstention may apply in noncriminal proceedings when three elements are shown:  "(1) there are ongoing state judicial proceedings; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity to raise federal claims in the state proceedings." *Brown-Thomas v. Hynie*, 441 F. Supp. 3d 180, 219 (D.S.C. 2019) (internal quotation marks omitted).  The Court cannot conclude at this point that there are any ongoing state judicial proceedings concerning Plaintiff's arrest and imprisonment on April 9, 2024, given that Plaintiff's allegations do not establish any connection between the basis for his arrest and the facts underlying his Assault Conviction.  The Court therefore does not address objection 8, Plaintiff's contention that *Younger*'s bad-faith prosecution exception applies. [Doc. 14-1 at 6; *see also id.* at 8 (objection 11 referencing the *Younger* bad-faith prosecution exception).]

The Court also notes that the Magistrate Judge concluded that Plaintiff's claims for declaratory relief are barred by principles related to *Heck*.  [Doc. 10 at 8.]  Although the Court agrees with the Magistrate Judge as to any § 1983 claims challenging Plaintiff's guilty plea or the Assault Conviction, the Court again notes that Plaintiff's § 1983 claims are broader than a mere challenge to his plea or conviction; they also challenge his arrest and imprisonment on April 9, 2024, which may or may not be factually related to the offense to which he pled guilty.  Accordingly, the Court rejects the portion of the Report concluding that any request by Plaintiff for declaratory relief is barred.

**Individual Claims and Defendants' Liability and Immunities**

The Magistrate Judge concluded that Counts One through Four are all purportedly brought under the Fourth and Fourteenth Amendments and thus that, to state a claim, Plaintiff must allege he was searched or seized without probable cause. [Doc. 10 at 20–21.] The Magistrate Judge concluded that Plaintiff does not adequately allege facts showing that he was subjected to a search or seizure without probable cause and thus that these four claims are subject to dismissal on this basis. [*Id.*] The Magistrate Judge emphasized that Plaintiff "does not allege that any named Defendant conducted a search, seizure, arrest, or imprisonment of Plaintiff separate from his arrests and incarceration related to the charges to which Plaintiff pled guilty." [*Id.*] The Magistrate Judge further concluded that Plaintiff also fails to state a claim for malicious prosecution because he does not allege facts showing that criminal proceedings ended without a conviction. [*Id.* at 22.]

The Magistrate Judge also concluded that Judge McCaslin is entitled to judicial immunity, that Esposito and Fender are entitled to prosecutorial immunity, and that Anderson and Cox are not liable under Count Four because Plaintiff does not adequately plead facts giving rise to their supervisory liability. [*Id.* at 14–18.]

Finally, the Magistrate Judge determined that Count Five fails to state a *Monell* claim and recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims. [*Id.* at 18–19, 23–24.]

The Court now turns to Plaintiff's objections as to these issues.

11

### Counts One and Two

The Court construes Plaintiff's objections as challenging the recommendations to summarily dismiss Counts One and Two [Doc. 14-1 at 2–3, 5, 7–8], and thus the Court reviews those recommendations de novo.

Section 1983 claims premised on false arrest or false imprisonment are analyzed as actions claiming unreasonable seizures in violation of the Fourth Amendment. *See, e.g., Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir. 2001). The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. When bringing a claim that a warrantless arrest constituted an unconstitutional seizure, a plaintiff must show that officers arrested him without probable cause. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." *Brown v. Gilmore*, 278 F.3d 362, 367–68 (4th Cir. 2002). "Probable cause is not a high bar, and it must be assessed objectively based on a totality of the circumstances, including common-sense conclusions about human behavior." *United States v. Jones*, 952 F.3d 153, 158 (4th Cir. 2020) (internal quotation marks omitted).

The Court disagrees with the Magistrate Judge's conclusion that Plaintiff fails to adequately allege that his arrest, after he left the courthouse on April 9, 2024, was unsupported by probable cause. Plaintiff plainly alleges he was arrested "without a warrant, without probable cause, [and] without a pending charge." [Doc. 1 ¶ 26.] Viewing this allegation in the light most favorable to Plaintiff, the Court finds it sufficient to state a

12

claim. The Court, of course, is aware that, while detained in the McCormick County Detention Center, Plaintiff entered a plea of guilty that resulted in the Assault Conviction. However, as already explained, the Court has no basis at this stage of the case to conclude that there is any overlap between the basis for Plaintiff's arrest on April 9, 2024, and the facts comprising the charge to which he subsequently pled guilty.

As noted, the Magistrate Judge concluded that Judge McCaslin is entitled to judicial immunity. [Doc. 10 at 14–16.] However, the Magistrate Judge's analysis does not explicitly address that conclusion with regard to Plaintiff's allegations that "all of [the] original 2021 charges, which formed the pretext for the April 9 hearing, were formally dismissed"; Plaintiff then left the courtroom and courthouse; Fender then urged Judge McCaslin to arrest Plaintiff "without a warrant, without probable cause, without a pending charge, and without jurisdiction" outside of the context of any judicial proceeding; and Judge McCaslin then ordered Plaintiff's arrest. [Doc. 1 ¶¶ 26, 36; *see id.* ¶¶ 21–25.] Upon recommitment of the case, the Magistrate Judge should directly address these allegations.

The Magistrate Judge also concluded that the allegations as to Count One against Cox, Waters, and Anderson are too conclusory to state a claim and that "Plaintiff appears to sue Cox and Anderson based on supervisory liability for their respective positions." [Doc. 10 at 17.] However, Plaintiff alleges that "Waters, Anderson, and Cox, acting under color of law, arrested and imprisoned [Plaintiff] on April 9, 2024, without a warrant, probable cause, or any lawful authority." [Doc. 1 ¶ 40.] The Court concludes that that allegation is sufficient at this stage to avoid summary dismissal because, construed

13

liberally, it is not based only on supervisory liability but, rather, alleges direct involvement in the constitutional violation.

In sum, for all of these reasons, the Court rejects the Report's conclusion that the Complaint fails to state a claim for relief as to Counts One and Two.[3]

### *Count Three[4]*

A "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Lambert v. Williams,* 223 F.3d 257, 261 (4th Cir. 2000). "To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). With respect to the favorable termination requirement, the Supreme Court has held "that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence." *Thompson v. Clark*, 596 U.S. 36, 44 (2022). Instead, "[a] plaintiff need only show that the criminal prosecution ended without a conviction." *Id.*

Here, Plaintiff has not plausibly alleged that the criminal prosecution that he challenges ended without a conviction. As noted, it is unclear from the Complaint whether the criminal charges underlying Plaintiff's arrest and imprisonment on April 9 were the

---

[3] To be clear, the Magistrate Judge should not take anything in this Opinion and Order as a suggestion of how he should resolve any issues the Court has not directly addressed. The Court will not specifically address Plaintiff's objections 9, 10, and 11 [Doc. 14-1 at 6–9], as the Magistrate Judge can consider them when the case is recommitted to him.

[4] Out of an abundance of caution for the pro se Plaintiff, the Court reviews de novo the recommendation to summarily dismiss Count Three.

same charges he pled guilty to the next day.  If they were the same, then his guilty plea would establish that those charges ended *with* a conviction.[5]  If they were not the same, then Plaintiff has failed to plead any facts regarding how the prosecution of the charges underlying his arrest and imprisonment on April 9 ended, which is fatal to his malicious prosecution claim.  *See Evans*, 703 F.3d at 647.  Accordingly, the Court agrees with the Magistrate Judge that Count Three is subject to summary dismissal.

### Count Four

Count Four alleges that Plaintiff was subjected to an unreasonable search within the meaning of the Fourth Amendment when he was strip searched without any basis to suspect he was a threat or was concealing contraband.  [Doc. 1 ¶¶ 29, 53–57.]  Plaintiff asserts Count Four against Anderson, Cox, and the Doe Defendants.  [*Id.*]

The Magistrate Judge appears to have concluded that this claim is subject to dismissal, not only because of *Heck* and *Younger*, but also because Plaintiff has failed to adequately allege "facts showing he was subjected to a search and seizure in the absence of probable cause."  [Doc. 10 at 20–21.]  To the extent that that was the Magistrate Judge's conclusion, the Court disagrees.  As already explained, the Court concludes Plaintiff has adequately alleged he was arrested and imprisoned without probable cause.  [*See* Doc. 1 ¶ 26.]  Further, Plaintiff's success on Count Four does not depend upon the premise that he was illegally detained or that there was no probable cause to believe he

---

[5] Moreover, Plaintiff's challenge is only to the *validity* of the Assault Conviction [Doc. 1 ¶ 51; *see also id.* at 16 (requesting a declaration that "the guilty plea entered by Plaintiff on April 10, 2024, and the resulting convictions are constitutionally invalid and void ab initio")], which undisputedly exists.  In that respect, Plaintiff essentially alleges not that criminal proceedings have terminated in his favor, but rather, that he is entitled to eventually have them terminated in his favor.

was guilty of a crime. Accordingly, the Court rejects the Report to the extent that it concluded Count Four fails to adequately allege a constitutional violation.

The Report also concluded that Cox and Anderson are sued based only on supervisory liability but that Cox and Anderson are entitled to dismissal because the Complaint does not contain allegations sufficient to support supervisory liability. [Doc. 10 at 17–18.] The Court agrees that Plaintiff has failed to allege supervisory liability. Additionally, liberally construing Count Four as attempting to allege bystander liability against Cox and Anderson [Doc. 1 ¶ 54 (alleging Plaintiff "was subjected to a humiliating and intrusive strip search by Defendants John and Jane Does 1-5, under the supervision of Defendants Anderson and Cox")], the Court concludes Plaintiff's allegations against Cox and Anderson are inadequate to state a bystander liability claim. "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002) (footnote omitted). Here, Plaintiff has not alleged facts supporting any of these elements. *See, e.g., Davis v. Lilly*, No. 7:23-cv-152, 2023 WL 6564894, at *5 (W.D. Va. Oct. 10, 2023) ("[The plaintiff's] conclusory statements that [the defendant] was present and failed to intervene, without specific factual support, are insufficient to state a claim of bystander liability."); *Wiggins v. Quesenberry*, 222 F. Supp. 3d 490, 501 (E.D. Va. 2016) (dismissing a bystander liability claim and noting that the plaintiff did not allege the distance that the defendant stood from the plaintiff, the amount of time during which the incident occurred, or whether the defendant was even watching the plaintiff's interaction with the offending officer). Accordingly, the Court modifies the

16

portion of the Report addressing Anderson's and Cox's individual liability and dismisses Count Four as against these two Defendants.

### Count Five

Finally, Count Five is Plaintiff's *Monell* claim. [Doc. 1 ¶¶ 58–62.] The Magistrate Judge concluded that this claim is subject to dismissal because Plaintiff has not identified any policy or custom of McCormick County that caused a constitutional violation. [Doc. 10 at 18–19, 22–23.] Out of an abundance of caution for the pro se Plaintiff, the Court has reviewed this conclusion de novo. Because the Court agrees with the Magistrate Judge's analysis, the Court dismisses Count Five on that basis.[6]

### CONCLUSION

Based upon the foregoing, the Court accepts in part, modifies in part, and rejects in part the Report and Recommendation of the Magistrate Judge and incorporates it by reference to the extent consistent with this Opinion and Order. Counts Three and Five are DISMISSED without prejudice, as is Count Four as against Defendants Anderson and Cox. Counts One and Two and Plaintiff's state law claims are recommitted to the

---

[6] Because the Court has reviewed the Report de novo, the Court has considered for itself the facts alleged and the legal consequences of those facts. Accordingly, the Court has specifically addressed only those objections necessary to reach the conclusions outlined in this Opinion and Order and need not address every enumerated objection. As previously noted the Magistrate Judge should consider Plaintiff's objections 9, 10, and 11 when conducting further review of the case.

Regarding Plaintiff's petition for writ of mandamus [Doc. 16], because this Order constitutes a ruling on Plaintiff's objections, the petition is found as moot to the extent it seeks to compel such a ruling. To the extent the petition seeks to compel issuance of summonses, it is denied without prejudice.

Magistrate Judge[7], as is Count Four as against the Doe Defendants.  Plaintiff's Petition for a writ of mandamus [Doc. 16] is FOUND AS MOOT in part and DENIED in part without prejudice.

IT IS SO ORDERED.

s/Jacquelyn D. Austin<br>
United States District Judge

June 15, 2026
Greenville, South Carolina

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.

---

[7] The Magistrate Judge recommended declining to exercise supplemental jurisdiction over the state law claims, but the recommendation depended on the Magistrate's Judge's recommendation to dismiss all claims over which the Court has federal question jurisdiction.  [Doc. 10 at 23–24.]  Because the Court does not agree that all of Plaintiff's § 1983 claims are subject to summary dismissal, the Court rejects the Magistrate Judge's recommendation concerning the state law claims.

18